Gen. 209]                                                                              209

**LABOR LAW**

OCCUPATIONAL HEALTH — ADMINISTRATIVE LAW — RULEMAKING — EFFECT ON WORKPLACE SMOKING REGULATIONS OF STATUTORY RESTRICTIONS

March 23, 1995

*Bonnie A. Kirkland, Esquire*
*Chief Legislative Officer*
*State House*
*Office of the Governor*

You have requested our opinion on three questions related to Senate Bill 860, "Smoking — Adoption of Regulations to Restrict Smoking":

1.     Is there a risk that a court might interpret Senate Bill 860, if it is enacted, to invalidate the entire regulations on smoking in an enclosed workplace, COMAR 09.12.23, adopted last year by the Commissioner of Labor and Industry?

2.     Is there a risk that a court might interpret Senate Bill 860 to apply to any regulations of the Commissioner dealing with workplace smoking other than COMAR 09.12.23?

3.     Certain provisions of Senate Bill 860 authorize the Commissioner to adopt regulations to permit smoking in certain premises, provided that the regulations fall within a range set out in Senate Bill 860 — that is, the regulations could not require less than 50 percent nor more than 60 percent of the specified premises to be subject to the smoking prohibition.  Given that the Commissioner's existing regulations, COMAR 09.12.23, do not contain language conforming to the permissible range in the bill, how would this provision of the bill be implemented without the adoption of new regulations addressing this point?

For the reasons stated below, we conclude as follows:

1.     Because Senate Bill 860 is ambiguous regarding its impact on the regulation of workplaces other than the establishments

identified in Senate Bill 860, there is a risk that a court might hold COMAR 09.12.23 to have been displaced in its entirety, requiring reproposal if it is to be applied to workplaces not identified in the bill. The position of this office, however, is that Senate Bill 860 ought to be construed so as to displace COMAR 09.12.23 only to the extent of its application to the establishments identified in the bill.

2.     If a court were to construe Senate Bill 860 literally, the court would hold that the bill prevents certain regulations other than COMAR 09.12.23 from being applied to the establishments identified in Senate Bill 860 − for example, the regulation that prohibits smoking in an asbestos removal worksite, should such an activity be undertaken in one of the specified establishments. The position of this office, however, is that Senate Bill 860 is limited in its effect to COMAR 09.12.23 or similar future regulations that address smoking in the workplace as a health hazard for workers who are exposed to environmental tobacco smoke, rather than smoking as an additional element of risk associated with another activity.

3.     The Commissioner would be required to initiate a rulemaking proceeding under the Administrative Procedure Act in order to impose, on certain restaurants and other premises specified in Senate Bill 860, the "non-smoking area" regulations authorized by the bill.

# I

## Senate Bill 860

Senate Bill 860 has the purpose, according to its title, "of prohibiting the Secretary of Licensing and Regulation and the Commissioner of the Division of Labor and Industry from proposing, adopting, or enforcing any regulation that restricts smoking certain tobacco products under certain circumstances." The bill, which is aimed at preventing application of a workplace smoking ban to bars, restaurants with liquor licenses, and other specified premises, is discussed in detail in a recently issued opinion, 80 *Opinions of the Attorney General* 306 (1995), and we shall not repeat that discussion here.

Of particular importance to the first two questions addressed in this opinion is Section 2 of the bill, which states that it "shall be construed retroactively and shall be applied and interpreted to affect the enforcement of any regulations, including COMAR 09.12.23.01 through .05, that have been proposed by the Secretary of Licensing and Regulation or the Commissioner of the Division of Labor and Industry that address the smoking or the possession of tobacco products in establishments affected by this Act."

## II

### Effect of Senate Bill 860 on the Whole of COMAR 09.12.23

Section 2 of Senate Bill 860, its retroactivity clause, makes clear that the bill will affect the workplace smoking regulations adopted by the Commissioner of Labor and Industry in July 1994. Your first question is whether a court might find these regulations to have been superseded in their entirety.

There is surely a risk that a court might interpret Section 2 to displace COMAR 09.12.23 in its entirety. Since the portion of the regulations that directly prohibits smoking (except in specially configured smoking rooms) does not separately address smoking in establishments affected by the bill, and since the bill "affect[s]" these regulations by eliminating the Commissioner's authority to adopt "any regulation" that imposes on the hospitality industry the requirements of COMAR 09.12.23, a court might conclude that the regulations as a whole are invalidated by their embedded requirements for the hospitality industry.[1]

In our opinion, however, the better reading is that Senate Bill 860 is intended to "affect" the regulations only to the extent of their requirements for hospitality industry establishments. Restaurants, bars, taverns, hotel and motel rooms, and convention and meeting facilities are encompassed by the regulations because they are specifically and separately itemized in the definition of "enclosed workplace." COMAR 09.12.23.01B(1)(b)(viii), (ix), (x), and (xi). The General Assembly's objective, made manifest in the repeated statutory references to smoking in particular establishments and

---

[1] For brevity's sake, we shall refer to the premises specified in Senate Bill 860 as "the hospitality industry."

underscored by the testimony of sponsors and proponents, is to undo the regulations as they affect the hospitality industry, not other employers.

A construction of Senate Bill 860 that leaves the regulations intact, except for the hospitality industry, is also consistent with the General Assembly's overall policy about regulations: "Unless a regulation expressly states otherwise, its provisions are severable." §10-128(a) of the State Government Article, Maryland Code. The regulations on smoking in enclosed workplaces, as applied to workplaces other than those in the hospitality industry, will not be "so incomplete that it cannot be carried out in accordance with the purpose of the regulation." §10-128(b) of the State Government Article (describing effect of judicial invalidation of a provision of a regulation).

# III

## Effect on Other Regulations

Section 2 of Senate Bill 860 states that it affects not only the Commissioner's July 1994 workplace smoking regulations but also "any regulations ... that address the smoking or possession of tobacco products in establishments affected by this Act." There is a risk that a court would simply apply this language literally. If a court did so, the bill would then have the effect, in certain circumstances, of curtailing a number of regulations that have nothing to do with the health effects of environmental tobacco smoke.

In COMAR 19.12.31, the Commissioner has incorporated by reference many federal occupational safety and health regulations. At least three of these require employers to ensure that employees do not smoke in work areas: where employees are occupationally exposed to asbestos (29 C.F.R. §1926.58(j)(3)),[2] lead (29 C.F.R. §1926.62(i)(1)), or arsenic (29 C.F.R. §1910.1018(f)(5)). While these regulations obviously would not affect the day-to-day operation of hospitality industry establishments, they would apply

---

[2] In July of this year, this regulation will be recodified without substantive change to 29 C.F.R. §1296.1101(j)(4).

when an establishment undergoes renovation or (in the case of arsenic, we understand) when a heating boiler is cleaned.

We feel confident in asserting, however, that the objective of Senate Bill 860 has nothing to do with these regulations, as they might rarely apply to the hospitality industry. We would urge a court to consider the legislative history of the bill and draw from this evidence the conclusion that the bill was aimed exclusively at the regulations adopted last year on the health effects of environmental tobacco smoke (or any similar regulations that might be proposed in the future), not at regulations that are altogether extraneous to the Legislature's concerns about the impact on the hospitality industry of a general smoking ban.[3]

## IV

### Rulemaking Requirements

Senate Bill 860 amends §2-106(c) of the Labor and Employment ("LE") Article, Maryland Code, to grant the Commissioner limited regulatory authority over smoking in restaurants with liquor licenses and hotel rooms:

> The Commissioner may adopt regulations to prohibit the smoking of tobacco products in specified areas of a restaurant as defined in Article 2B, §1-102 of the Code that possesses an alcoholic beverages license issued under Article 2B of the Code, a hotel, or a motel, if the regulations do not require:
>
> (i)  That less than 50% nor more than 60% of the premises of the restaurant, or less than 50% nor more than 60% of the hotel or motel rooms be subject to the smoking prohibition; or

---

[3] A literal reading that would excise the smoking prohibitions in these other regulations would make the State occupational safety and health program less effective than the federal program, contrary to federal law. *See* 29 U.S.C. §667(c)(2) and (f). This is another reason why a literal reading would not be the proper way to construe the statute.

> (ii) That the structural or atmospheric conditions of the areas of the restaurant, hotel, or motel be modified.[4]

This grant of authority does not exempt the Commissioner from compliance with the rulemaking requirements of the Administrative Procedure Act, should the Commissioner decide that the worker protection goals of the Maryland Occupational Safety and Health Act would be furthered by such regulations. A requirement that a restaurant maintain a non-smoking area of a particular size, or that a set percentage of a hotel's rooms be non-smoking, is unquestionably a "regulation," as that term is defined in §10-101(e) of the State Government ("SG") Article. *See generally* 72 *Opinions of the Attorney General* 313, 320 (1987).

As you point out, the Commissioner's current regulations do not contain a provision comparable to that authorized in Senate Bill 860. Therefore, the regulatory authority granted by the bill could be given effect only through the proposal and adoption of new regulations, in accordance with the provisions of the APA, imposing a non-smoking area requirement that would fall within the limits of Senate Bill 860. *See CBS, Inc. v. Comptroller*, 319 Md. 687, 692, 575 A.2d 324 (1990). Any attempt to require these non-smoking areas in advance of adoption of such a regulation would be unenforceable. SG §10-125(d)(3).

## V

### Conclusion

In summary, it is our opinion that:

1.    There is a risk, the degree of which we cannot quantify, that a court would construe Senate Bill 860 to displace COMAR 09.12.23 in its entirety. That is not the view of this office, however.

---

[4] The Commissioner is likewise authorized to regulate in this manner specified areas of public events held by certain organizations. Proposed LE §2-106(c)(2). Comparable amendments are made to the Commissioner's rulemaking authority under LE §5-314 and to the rulemaking authority of the Secretary of Licensing and Regulation under §2-105 of the Business Regulation Article.

2.    There is a risk, the degree of which we cannot quantify, that a court would construe Senate Bill 860 to apply not only to COMAR 09.12.23 or similar future regulations that address workplace exposure to environmental tobacco smoke as a primary health hazard but also to all other regulations that prohibit smoking in the workplace under various circumstances. That is not the view of this office, however.

3.    The Commissioner would be required to initiate a rulemaking proceeding under the APA in order to impose the "non-smoking area" regulations authorized by Senate Bill 860.

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Jack Schwartz
> *Chief Counsel*
>   *Opinions & Advice*

***Editor's Note:***

Senate Bill 860 was vetoed by the Governor.  VI Laws of Maryland 1995, at 3641.  Other legislation on this subject, Chapter 5 (House Bill 1368) of 1995, was enacted and codified at §§2-106(c) and 5-314(c) of the Labor and Employment Article.